**Kevin C. Brague, OSB No. 050428**
kevin@braguelawfirm.com
THE BRAGUE LAW FIRM
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
t: 503.922.2243
f: 503.296.2046

Attorney for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ALEXANDRA BOOT**, an individual, | Case No. 3:23-CV-00480 |
| Plaintiff, | |
| v. | **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** |
| **LAKE OSWEGO 7J SCHOOL DISTRICT**, an Oregon public corporate entity by and through the Board of Directors of Lake Oswego 7J School District; | EXPEDITED HEARING REQUESTED |
| Defendant. | REQUEST FOR ORAL ARGUMENT |

## MOTION

Pursuant to Fed. R. Civ. P. 65, Alexandra Boot requests and moves the court for a

temporary restraining order and preliminary injunction against Defendant Lake Oswego 7J

School District ("LOSD") to relocate a student that admitted to raping her to an equal but

alternative education setting outside of Lake Oswego High School, but within LOSD.

Alexandra Boot brings three claims against LOSD for Title IX Retaliation, ORS

659.852, and negligence. To prevail on the first claim, she needs to prove she was engaged in a

protected activity, she suffered and adverse action, and there was a causal link.  To prevail on her second claim under ORS 659.852 Ms. Boot needs to prove that she attended LOSD and that it disenrolled her, or denied her academic opportunities, or excluded her from academic activities, or subjected her to harassment, or took other adverse action that disadvantaged her as a student.  To prevail on her negligence claim, Ms. Boot needs prove that LOSD did not use reasonable care to avoid harming her and that her injury was foreseeable.

Ms. Boot requests the bonding/surety requirement be waived.

Ms. Boot notified LOSD of this motion by personal service on April 4, 2023.

Ms. Boot requests an expedited hearing on this motion no later than April 14, 2023 pursuant to Local Rule 7.1(g) to keep further harm from befalling her as noted in the following Memorandum and accompanying declarations in support.

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

Student Alexandra "Alex" Boot was raped by a classmate who admitted doing so over text.  Alex Boot and the offending male student who raped her attend Lake Oswego High School.  This sexual assault/rape was reported to LOHS Administrator Ryan Rosenau who refused to remove the offending student from physically attending LOHS even though an equal education environment was available to the offending student (Lakeridge High School which is less than five miles away).

LOHS, like many school districts throughout Oregon, placed the educational interests of the male sexual assaulter over the educational interests of the female victim.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

Alex Boot brings this action for the simple purpose of accessing her education without having to face and be traumatized by her rapist multiple times throughout the school day.

## STATEMENT OF FACTS

In August and September 2022 Student Alexandra "Alex" Boot was a seventeen-year-old student attending Lake Oswego High School ("LOHS") within the Lake Oswego School District ("LOSD"). Alex Boot is a senior at LOHS, expected to graduate in June, 2023 and accepted admission to Oregon State University to begin college in the Fall, 2023.

Oregon is a compulsory school state (ORS 339.010 and 339.020). Decl., Brague, Ex. 1 LOSD Policy JEA. LOSD as a public school district is responsible for student conduct including managing hazing and student sexual assault. See, ORS 339.351 et seq.

LOSD is made up of approximately 6,900 students attending 11 schools, which include: 6 neighborhood elementary schools and 1 world language immersion elementary school (grades PreK-5); 2 middle schools (grades 6-8); 2 high schools and one regional recovery charter school (grades 9-12); and 1 Community Transition Program (up to age 21). Decl., Brague, Ex. 2.

LOSD promises a

> commitment to providing a safe, positive, and productive learning environment for all students, will consult with parents/guardians, employees, volunteers, students, administrators, and community representatives in developing this policy in compliance with applicable Oregon law. Hazing, harassment, intimidation or bullying, menacing, and acts of cyberbullying by students, staff, or third parties toward students is strictly prohibited in the district. Teen dating violence is unacceptable behavior and prohibited. Each student has the right to a safe learning environment.
>
> […]
>
> "Harassment, intimidation or bullying" means any act that substantially interferes with a student's educational benefits, opportunities or performance, that takes place on or immediately adjacent to district grounds, at any district-sponsored activity, on district-provided transportation, or at any official district bus stop, that

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

may be based on, but not limited to, the protected class status of a person, and having the effect of:

1. Physically harming a student or damaging a student's property;
2. Knowingly placing a student in reasonable fear of physical harm to the student or damage to the student's property; or
3. **Creating a hostile educational environment including interfering with the psychological well-being of the student.**

Decl., Brague, Ex. 3, LOSD Policy JFCF [emphasis added].

LOSD states that:

The Board expects student conduct to contribute to a productive learning climate. Students shall comply with the district's policies, administrative regulations, school and classroom written rules, pursue the prescribed course of study, submit to the lawful authority of teachers and school officials and conduct themselves in an orderly manner during the school day and during district-sponsored activities.

Careful attention shall be given to procedures and methods whereby fairness and consistency without bias in discipline shall be assured each student.

The following forms or displays of student misconduct, but not limited to, shall be subject to discipline, suspension or expulsion:

1. Assault;

2. Hazing, harassment, intimidation, bullying, menacing, cyber bullying or teen dating violence as prohibited by Board policy JFCF – Hazing/Harassment/Intimidation/Bullying/Menacing/ Cyber bullying/Teen Dating Violence/Domestic Violence – Student and accompanying administrative regulation;

[...]

8. Sexual harassment as prohibited by Board policy JBA/GBN – Sexual Harassment and accompanying administrative regulation;

[…]

12. Open defiance of a teacher's authority, including persistent failure to comply with the lawful directions of teachers or school officials;
13. Violation of law, Board policy, administrative regulation, school or classroom rules.

Decl., Brague, Ex. 4, LOSD Policy JFC.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

LOSD is committed to

eliminating sexual harassment. Sexual harassment will not be tolerated in the district. All students, staff members and other persons are entitled to learn and work in an environment that is free of harassment. All staff members, students and third parties are subject to this policy. Any person may report sexual harassment.

[…]

Sexual harassment of students, staff members or third parties1 shall include:
1. A demand or request for sexual favors in exchange for benefits;
2. Unwelcome conduct of a sexual nature that is physical, verbal, or nonverbal and that:
a. Interferes with a student's educational activity or program;
b. Interferes with a school or district staff member's ability to perform their job; or
c. Creates an intimidating, offensive or hostile environment.
3. Assault when sexual contact occurs without the student's, staff member's or third party's consent because the student, staff member of third party is under the influence of drugs or alcohol, is unconscious or is pressured through physical force, coercion or explicit or implied threats.

[…]

Examples of sexual harassment may include, but not be limited to, physical touching or graffiti of a sexual nature; displaying or distributing of sexually explicit drawings; pictures and written materials; sexual gestures or obscene jokes; touching oneself sexually or talking about one's sexual behaviors in front of others; or spreading rumors about or rating other students or others as to appearance, sexual activity or performance.

[…]

Any staff member who becomes aware of behavior that may violate this policy shall immediately report to a district official. The district official (with coordination involving the reporting staff member when appropriate) will take any action necessary to ensure the:

1. Student is protected and to promote a non-hostile learning environment;
2. Staff member is protected and to promote a non-hostile work environment; or
3. Third party who is subjected to the behavior is protected and to promote a nonhostile environment.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

This includes providing resources for support measures to the student, staff member or third party who was subjected to the behavior and taking any actions necessary to remove potential future impact on the student, staff member or third party, but are not retaliatory against the student, staff member or third party being harassed or the person who reported to the district official.

[…]

Retaliation against persons who initiate complaint or otherwise report sexual harassment or who participate in an investigation or other related activities is prohibited. The initiation of a complaint, reporting of behavior, or participation in an investigation, in good faith about behavior that may violate this policy may not adversely affect the:

1. Educational assignments or educational environment of a student or other person initiating the complaint, reporting the behavior, or participating in the investigation; or

2. Any terms or conditions of employment or of work or educational environment of a school or district staff member or other person initiating the complaint, reporting the behavior, or participating in the investigation.
Students who initiate a complaint or otherwise report harassment covered by the policy or who participate in an investigation may not be disciplined for violations of the district's drug and alcohol policies that occurred in connection with the reported prohibited conduct and that were discovered because of the report or investigation, unless the student gave another person alcohol or drugs without the person's knowledge and with the intent of causing the person to become incapacitated and vulnerable to the prohibited conduct.

Decl., Brague, Ex. 5, LOSD Policy JBA/GBN.

On August 27, 2022 Alex Boot was raped by a fellow male student while beyond the purview of LOSD. Decl. Alex Boot. In a text message on August 28, 2022 this fellow male student admits to raping Alex Boot Decl. Alex Boot, Ex. 1.

Weeks later, Alex Boot discloses the rape to her parents. Decl. Alex Boot; Decl. Manning, ¶3; Decl. T. Boot, ¶3. On October 25, 2022 Ryan Rosenau, LOHS Assistant Principal is informed of the rape. Decl. T. Boot. LOSD takes no action to protect Alex Boot, but advises that a restraining order should be obtained. *Id.* Clackamas County will not issue restraining

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

orders against minors.  See, ORS 107.726.  Alex Boot stops attending school.  Decl. Alex Boot; Decl. T. Boot.

On November 7, 2022 Alex Boot meets with Ryan Rosenau to discuss a safety plan. Decl. Alex Boot; Decl. Manning; Decl. T. Boot.  Alex Boot requests that her rapist be transferred to another high school within LOSD.  *Id*.  That request is refused or ignored.  *Id*.  Alex Boot returns to school a couple days later under a safety plan.  Decl. Alex Boot.  The Safety Plan contains the specific admonition to adhere to the safety plan with fidelity and failure to follow it will result in discipline up to and including expulsion.  Decl. T. Boot, ¶8 and Ex. 1.

The offending male student is fully apprised of the safety plan which requires him to avoid passing times, unstructured times, lunch, and other times where he may encounter Alex Boot.  Decl. Alex Boot.

Notwithstanding the safety plan, the offending male student violates the safety plan on multiple days on multiple occasions.  Decl. Erin Anderson and Alyssa Aebi.  Alex Boot notifies Administrator Ryan Rosenau who failed to update the safety plan for the new semester.  Decl. Manning. Alex Boot stops attending school.  Decl. Alex Boot.

On February 10, 2023 LOSD updates and delivers a safety plan for Alex Boot and she returns to LOHS a few days later.  Decl. Alex Boot.  The updated Safety Plan contains the specific admonition to adhere to the safety plan with fidelity and failure to follow it will result in discipline up to and including expulsion.  Decl. Boot, ¶8 and Ex. 2.

In early March 2023 the offending male student continues to violate the safety plan and admits doing so to LOHS Administrator Ryan Rosenau.  Decl. Erin Anderson and Alyssa Aebi. The offending male student receives no consequence or discipline clearly signaling to him and

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

Alex Boot that LOSD's safety plan is worthless and will not be enforced. Decl. Alex Boot and Manning. Alex Boot stops attending school. Decl. Alex Boot.

LOHS Administrator Ryan Rosenau admits the safety plan is not to protect Alex Boot Decl. Manning. LOSD refuses to acknowledge the hostile education environment it condones for female victims of rape.

LOSD tells Alex Boot that she can leave or transfer out of LOHS. Decl. Alex Boot, ¶16; Decl. T. Boot, ¶13; Decl. Manning, Ex. 3.

To add salt to the wound, in an act of retaliation, on March 17, 2023 LOSD informed Alex Boot that she was being withdrawn from LOSD due to her absence from school. Decl. Manning, Ex. 4 and 5. On April 3, 2023 LOSD removed Alex Boot from its rolls effectively expelling her. Decl. Manning, Ex. 6. This de-facto expulsion was done regardless of Alex Boot's excused absences and LOSD's condoning a hostile education environment by allowing her rapist's continuing harassment, intimidation, and bullying. These acts violate LOSD's Board Policies JBA/GBN, JFC, and JFCF.

LOSD's Policy JGE, Expulsion, states:

> No student may be expelled without a hearing unless the student's parents, or the student if 18 years of age, waive the right to a hearing either in writing or by their failure to appear at a scheduled hearing. By waiving the right to a hearing, the student and parent agree to abide by the findings of a hearings officer.
>
> When an expulsion hearing is recommended by a principal or mandated by district policy or regulations, the following procedure is required:
>
> 1. Notice shall be given to the student and the student's parent or guardian by personal service1 or by certified mail2. Notice shall include the following:
>
> a. The specific rules or regulations alleged to have been violated;
>
> b. The conduct constituting the alleged violation, including the nature of the evidence of the violation and reason for expulsion;

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

c. A recommendation for expulsion and period of expulsion. The period of expulsion may not exceed 12 months;

d. The student's right to a hearing;

e. When and where the hearing will take place; and;

f. Alternative programs of instruction or instruction and counseling for the parents' consideration.

Decl. Brague, Ex. 6.

LOSD's website state that "Oregon State Law requires school districts to drop a student from enrollment if at any point the student is absence (unexcused /excused) for 10 consecutive school days during a school year. The student can be re-enrolled at parent request to the current school with the proper registration materials." Decl. Brague, Ex. 7. This is statement is materially false. Oregon Revised Statute ORS 339.010 through ORS 339.095 contains no such rule. Similarly, Oregon Administrative Rules on attendance and student absences (OAR 581-021-0077 and 581-021-0081) contain no such rule. LOSD Policy on Student Absences and Excuses contains no such rule. Decl. Brague, Ex. 8, LOSD Policy JED. LOSD Policy on Truancy contains no such rule. Decl. Brague, Ex. 9, LOSD Policy JEDA. Even students who are, in fact, truant may only be subject to the penalties of detention, suspension, and/or ineligibility to participate in athletics of other activities. LOSD Policy JED, *supra*.

LOSD's disenrolling of Alex Boot is in violation of ORS 339.010 and in retaliation for Alex Boot complaining of her rapist's ongoing harassment, intimidation, and bullying and the resultant hostile education environment.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Alex Boot needs additional high school credits to graduate in June 2023. Decl. Alex

Boot. Her continued inability to attend LOHS prevents her from attending class to obtain the

credit necessary for her graduation in little over two months. Decl. Alex Boot

## ARGUMENT

A.    Legal Standard for Issuance of a Preliminary Injunction.

A plaintiff seeking a preliminary injunction must establish that she is likely to succeed

on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in her favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). In each case,

courts must balance the competing claims of injury and must consider the effect on each party

of the granting or withholding of the requested relief. *Id*. at 24.

The Ninth Circuit continues to apply the sliding scale approach to preliminary

injunctions. *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir 2011).

Under this approach, the elements of the preliminary injunction test are balanced, so that a

stronger showing of one element may offset a weaker showing of another. *Id*. citing e.g., *Clear

Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Additionally,

"a preliminary injunction could issue where the likelihood of success is such that "serious

questions going to the merits were raised and the balance of hardships tips sharply in

[plaintiff's] favor." *Id*. The "serious questions" test survives *Winter* when applied as part of the

four-element *Winter* test. *Id*. In other words, "serious questions going to the merits" and a

hardship balance that tips sharply toward the plaintiff can support issuance of an injunction,

assuming the other two elements of the Winter test are also met. *Id*.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

A mandatory injunction goes well beyond simply maintaining the status quo, requires a heightened burden of proof, and is particularly disfavored. *Hecox v. Little*, 479 F.Supp.3d 930, 972 (D Idaho 2020) citing *Marlyn Nutraceuticals, Inc. v. MucosPharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). Mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages. *Id.*

B.    <u>Alex Boot is Likely to Succeed on the Merits</u>.

   i.    *Title IX Retaliation*

To prevail on a Title IX Retaliation claim, a plaintiff needs to prove she was engaged in a protected activity, she suffered an adverse action, and there was a causal link. *Emeldi v. Univ. of Or.*, 673 F3d 1218, 1223 (9th Cir 2012)[a plaintiff must first make out a prima facie case of retaliation by showing (a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two].

Alex Boot is and was engaged in the protected activity of attending school. This is an Oregon Constitutional Right. Or. Const. Art. VIII; see also, *Rysdam v. Sch. Dist.*, 154 Or 347, 351-52, 58 P2d 614, 616 (1936)["It is the public policy of the state to afford all children of school age a reasonable opportunity to attain, at least, a common school education."]. Alex Boot has the protected right to attend a public high school in a safe environment free from harassment, intimidation, and bullying based on her sex. ORS 339.351 et seq.; LOSD Policy JFCF and Policy JBA/GBN (Decl. Brague, Ex. 3 and 5). Alex Boot has the right to complain about her rape to LOHS administration and have LOSD enforce its policies and safety plan. Alex Boot also has the right to absent herself from school when LOSD condones a hostile education environment which interferes with her psychological well-being. Decl. Brague, Ex.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

3, LOSD Policy JFCF. LOSD does not have the right or authority to disenroll Alex Boot because she is absent due to the hostile education environment. The act of dis-enrolling Alex Boot on this basis is retaliation by LOSD's own definition. Decl. Brague, Ex. 5, LOSD Policy JBA/GBN.

Alex Boot suffered an adverse action by LOSD when it refused to enforce the safety plan, refused to apply established polices to the offending male student, pushed Alex Boot to leave school, and dropped Alex Boot from enrollment without legal basis.

In sum, Alex Boot will more than likely succeed on the merits because she has shown she was engaged in a protected activity of reporting sexual harassment, harassment, intimidation, and bullying. She has shown that she suffered an adverse action by LOSD's failure to enforce its safety plan, telling her to leave school, and dropping her from enrollment. The causal link between the two is substantiated by LOSD's agent and Administrator Ryan Rosenau recommendations and actions toward Alex Boot including telling her to transfer out of LOHS, drop out, or return to LOHS and just deal with the daily trauma from her rapist.

ii.   *ORS 659.852 Retaliation*

To prevail on her second claim under ORS 659.852 Alex Boot needs to prove that she attended LOSD and that it disenrolled her, or denied her academic opportunities, or excluded her from academic activities, or harassed, or took other adverse action that disadvantaged her as a student.

ORS 659.852 defines "Retaliation" as

> suspension, expulsion, disenrollment, grade reduction, denial of academic or employment opportunities, exclusion from academic or extracurricular activities, denial of access to transcripts, threats, harassment or other adverse action that substantially disadvantages a student in academic, employment or extracurricular activities.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

LOSD Administrator Ryan Rosenau informed Alex Boot that she "will be withdrawn from school after 10 consecutive days of absences." Decl. Manning, Ex. 3 and 4. This action is not only retaliatory, but also jeopardizes Alex Boot's high school graduation, as well as causing the loss of her admission to Oregon State University this Fall (2023). Decl. Alex Boot.

Alex Boot's absences are only because of the hostile education environment condoned and fostered by LOSD in allowing her rapist to continue to face her within the school environment. Alex Boot is being denied her right to an education, classes, and activities pursuant to the Oregon Constitution Art. VIII, *Rysdam v. School Dist.*, 154 Or 347 (1936), and *Neuhaus v. Federico*, 12 Or App 314 (1973).

It is anticipated that LOSD will argue that it is not retaliating because it believes its attendance policy has legal support. LOSD's website states:

> Oregon State Law requires school districts to drop a student from enrollment if at any point the student is absence (unexcused /excused) for 10 consecutive school days during a school year. The student can be re-enrolled at parent request to the current school with the proper registration materials.

Decl. Brague, Ex. 7.

There is no such Oregon Law in statute, regulation, or LOSD school policy. This pronouncement is a fiction, a lie, and is employed by LOSD to remove and retaliate against students like Alex Boot.

ORS 339.010 through 339.095 state the law with regard to attendance and its exceptions in Oregon. Nothing in these statutes state a student shall be un-enrolled or dropped from school due to ten consecutive days of missed school during a school year regardless of whether an absence is excused or unexcused.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

The closest language to LOSD's practice is found in ORS 339.065(3)(a) which states that "Any pupil may be excused from attendance by the district school board for a period not to exceed five days in a term of three months or not to exceed 10 days in any term of at least six months." For students who have unexcused absences, then an Oregon public school district may consider a student as having irregular attendance after eight unexcused one-half day absences in any four-week period during which the school is in session. ORS 339.065(1).

If a student is found violating the attendance statutes, then the public school district may notify the parents and an attendance officer. ORS 339.071 to 339.090. Again, nothing in the statute permits a school district from un-enrolling or dropping a student out of school.

Oregon Administrative Regulations do not support LOSD. OAR 581-021-0077 Compulsory Attendance Notices and Citation follows the statutory scheme. Specifically, OAR 581-021-0077(1)(e) defines "regular attendance" to mean "attendance which does not include more than eight unexcused one-half day absences, or the equivalent thereof, in any four-week period in which the school is in session." No language in OAR 581-021-0077 mandates dropping a student from school due to their absences.

OAR 581-021-0081, Student Absences, contradicts LOSD's fabricated state law. OAR 581-021-0081 states in relevant part:

> (5) School Response to Absence. When notified by a family member, caregiver, or eligible student of an excused or unexcused absence, schools must:
>
> (a) Allow work missed by the student to be made up within a reasonable period of time following the return to school, at a minimum of one day per day absent. Schools must work with students to determine what is reasonable based upon the student needs, academic situation, and amount of make up work to be completed. For a planned absence, schools should provide homework prior to the absence. Evaluation of student work received within the allowable time following return to school shall not incur a penalty or grade reduction related to being late.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

(b) Offer equitable access to community, academic, and social/emotional resources. Resources must be culturally and linguistically responsive and support mental/behavioral health and physical well-being.

This regulation contradicts LOSD's approach to removing students from their high school education when they complain of sexual harassment and hostile education environment.

LOSD may direct this Court's attention to OAR 581-023-0006(l), Student Accounting Records and State Reporting to justify its misrepresentation:

(l) "Inactive roll" means the list of students enrolled for purposes of credit but not attending the school or program. Includes students attending private alternative or Job Corps programs, students withdrawn after ten consecutive days' absence and students served on a tutorial basis outside the classroom;

This regulation allows a school to place an enrolled student on an "inactive roll" for "students withdrawn after ten consecutive days' absence." This regulation, however, is limited to accounting and reporting and is unrelated to the attendance laws. Attendance law are not even cited in the regulation for supporting any of the regulations. Nowhere in the attendance statutes does "inactive roll" or " ten consecutive days' absence" appear.

LOSD is using its accounting and reporting requirements to the Oregon Department of Education as justification to expel children like Alex Boot from school.

LOSD has no defense for this violation of Oregon's public policy of educating its children. "The public schools are for the benefit of children within school age … its is proper also to see that no one within school age should be denied the privilege of attending school …" *Neuhaus v. Federico*, 12 Or App 314, 321 (1973).

LOSD has no defense to publishing and adhering to a fictional law in lieu of the stated law and regulations governing attendance in Oregon. According to the legal maxim, "as any first year law student is taught, ignorantia juris non excusat — "Ignorance of the Law is no

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

excuse." *Mann v. Gullickson*, No. 15-cv-03630-MEJ, 2016 US Dist LEXIS 152125, at *31 (ND Cal Nov. 2, 2016).

Thus, for the foregoing reasons and analysis, Alex Boot is likely to succeed on the merits of her ORS 659.852 retaliation claim.

*iii. Negligence Claim*

To prevail on her negligence claim, Alex Boot needs prove that LOSD did not use reasonable care to avoid harming her and that her injury was foreseeable.

If this Court finds that Alex Boot is likely to succeed on her ORS 659.852 Retaliation claim, then should will also likely succeed on her negligence claim because this statute sets a standard of care. As argued above, LOSD breached the standard of care by misrepresenting Oregon law to Alex Boot and threatening her de-facto expulsion.

There is no meaningful distinction between un-enrolling a student based on their complaints of sexual harassment, harassment, bullying, and complaining of a hostile education environment or expelling them. In cases of expulsion, however, due process mandates notice and a hearing. In this case, removing a student from their right to attend school because they refuse to be traumatized by their rapist, and further victimized, LOSD denies their due process rights and removes them from school without notice or hearing.

LOSD's Policy JGE, Expulsion, states:

> No student may be expelled without a hearing unless the student's parents, or the student if 18 years of age, waive the right to a hearing either in writing or by their failure to appear at a scheduled hearing. By waiving the right to a hearing, the student and parent agree to abide by the findings of a hearings officer.
>
> When an expulsion hearing is recommended by a principal or mandated by district policy or regulations, the following procedure is required:

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

1. Notice shall be given to the student and the student's parent or guardian by personal service1 or by certified mail2. Notice shall include the following:

a. The specific rules or regulations alleged to have been violated;

b. The conduct constituting the alleged violation, including the nature of the evidence of the violation and reason for expulsion;

c. A recommendation for expulsion and period of expulsion. The period of expulsion may not exceed 12 months;

d. The student's right to a hearing;

e. When and where the hearing will take place; and;

f. Alternative programs of instruction or instruction and counseling for the parents' consideration.

Decl. Brague, Ex. 6.

LOSD provided none of these procedural due process rights to Alex Boot.

As argued above, and incorporated here, LOSD's conduct fell below numerous standards of care as articulated in its own policies. Each of these breached policies suggest that Plaintiff will prevail on her negligence claim because it is foreseeable that LOSD's adherence to its unlawful policy will result in the unlawful deprivation of a public education.

It is important to address the foreseeability issue in the context of the special relationship between a public school and a public school student when, like here, there is no physical touching by LOSD upon Alex Boot.

a.    *The special relationship between a student and school directs the foreseeability analysis*

Whether or not a special relationship exists between a student and a school determines foreseeability. *Sloan v. Providence Health System*, 364 Or 635, 643 (2019)["foreseeability plays a role in determining whether a defendant's conduct is negligent (in other words, in setting

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

a defendant's standard of care)"].  A special relationship exists here between LOSD and Alex

Boot.  The seminal case for analyzing negligence in Oregon's public schools is *Fazzolari v.*

*Portland Sch. Dist.*, 303 Or 1, 17-18 (1987):

> In short, unless the parties invoke a status, a relationship, or a particular standard
> of conduct that creates, defines, or limits the defendant's duty, the issue of
> liability for harm actually resulting from defendant's conduct properly depends
> on whether that conduct unreasonably created a foreseeable risk to a protected
> interest of the kind of harm that befell the plaintiff. The role of the court is what
> it ordinarily is in cases involving the evaluation of particular situations under
> broad and imprecise standards: to determine whether upon the facts alleged or
> the evidence presented no reasonable factfinder could decide one or more
> elements of liability for one or the other party. To quote Stewart v. Jefferson
> Plywood Co.:  "The jury is given a wide leeway in deciding whether the conduct
> in question falls above or below the standard of reasonable conduct deemed to
> have been set by the community. The court intervenes only when it can say that
> the actor's conduct clearly meets the standard or clearly falls below it."

The key word and phrase in the negligence and foreseeability analysis framed by the

Oregon Supreme Court is "unless the parties invoke a status, a relationship, or a particular

standard of conduct . . ."  then the court analyzes the foreseeability.  The status between LOSD

and Alex Boot is a special relationship requiring a heightened duty of care.  *Fazzolari*, supra;

See also, *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal 4th 861, 138 Cal Rptr 3d 1, 270

P3d 699 (2012); *Carabba v. Anacortes Sch. Dist.*, 72 Wash 2d 939, 435 P2d 936 (1967); and

*Jerkins v. Anderson*, 191 NJ 285, 922 A2d 1279 (2007).

*Fazzolari* continues:

> It is a special duty arising from the relationship between educators and children
> entrusted to their care apart from any general responsibility not unreasonably to
> expose people to a foreseeable risk of harm. The compulsory school attendance
> law, ORS 339.010 to 339.090, virtually mandates that children be so entrusted to
> a school and, for most families, leaves little choice to which school.

*Id*. at 19.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

This special relationship between a school and student is again recognized in *Shin v. Sunriver Preparatory Sch., Inc.*, 199 Or App 352, 367 (2005). In *Shin*, the Court of Appeals recognized a special relationship between a school and an international homestay student. *Id*. at 365. This special relationship gave rise to a heightened duty on the part of the school to protect the student from harm, and that student's legally protected interest supported a finding of negligence against the school. *Id*.

The special relationship was also recognized in *Piazza v. Kellim*, 360 Or 58 (2016). In *Piazza*, a foreign exchange student was shot and killed outside a nightclub in Portland. Suit was brought for her death which was dismissed on an ORCP Rule 21 motion and subsequently appealed. The Court analyzed the negligence of the parties and then defined a special relationship that existed as the relationship between a child and a person entrusted with that child's care. The Court held:

> In her complaint, plaintiff invoked two special relationships that informed defendants' obligations toward Delgado, which defendants have not challenged at this point in the litigation. The first, which plaintiff invoked as to the Zone defendants, is the relationship between possessors of land and persons whom they invite onto their premises. As possessors of premises, the Zone defendants had an obligation to take reasonable steps to protect the nightclub's visitors from reasonably foreseeable criminal acts by third persons. See, e.g., *Uihlein v. Albertson's, Inc.*, 282 Or 631, 639, 580 P2d 1014 (1978) (noting that this court previously had adopted standard set out in Restatement (Second) of Torts section 344 comment f (1965) "as being a part of the law of this state"). The second special relationship, which plaintiff invoked with respect to the Rotary defendants, is the relationship between a child and a person entrusted with that child's care. For example, schools have a special duty to students "apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm," and the "scope of th[at] obligation does not exclude precautions against risks of crime or torts merely because a third person inflicts the injury." *Fazzolari*, 303 Or at 19, 20.

*Piazza* at 72.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

The analysis and conclusion in *Fazzolari*, *Shin*, and *Piazza* apply in this case. Alex Boot was entrusted to LOSD's custody, care, and supervision. This is a special duty apart from any general responsibility (especially in the context of a school supervision of children), to not unreasonably expose people to a foreseeable risk of harm – including acting with reasonable care in responding to rape, sexual assault, sexual harassment, harassment, and bullying. Especially when a school district adopts policies governing these behaviors. Decl. Brague, Ex. 4, 5, and 6, LOSD Policies JFCF, JFC, and JBA/GBN.

Judge Mosman of the U.S. District Court, District of Oregon held that "the Oregon Supreme Court would likely recognize a special relationship between a public school and a public school student." *Taissa & Ray Achcar-Winkels v. Lake Oswego Sch. Dist.*, No. 3:15-cv-00385-YY, 2017 US Dist LEXIS 80404, at *11 (D Or May 25, 2017). Decl. Brague, Ex. 10.

> More fundamentally, the Oregon Supreme Court recognized a special "duty of supervision" imposed upon schools as far back as 1987. See Fazzolari by & Through *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Ore. 1, 734 P.2d 1326, 1337 (Or. 1987). Specifically, the court stated that schools have "a special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm." Id. The court also noted that the "vast majority of students are minors, and school personnel assume a great deal of authority over their conduct during the school day." *Id*. This degree of control is a touchstone of special relationships in Oregon.

*Id*. at 9-10.

Judge You recently analyzed very similar argument and found a special relationship:

> The Third Restatement notes that "[d]espite the Second Restatement's limited treatment of affirmative duties of schools, such a duty has enjoyed substantial acceptance among courts since the Second Restatement's publication" and "courts generally impose an affirmative duty on schools." *Id*. § 40 cmt. l (collecting cases). "The core of the duty derives from the temporary custody that a school has of its students, the school's control over the school premises, and the school's functioning in place of parents." *Id*. § 40 reporter's note to cmt. l.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Additionally, the Oregon Supreme Court has "recognized a special 'duty of supervision' imposed upon schools as far back as 1987." *Achcar-Winkels*, 2017 WL 2291338, at *3 (citing *Fazzolari*, 303 Or. at 19 (recognizing "a special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm")). In *Fazzolari*, for example, the Oregon Supreme Court "noted" that "'[t]he vast majority of students are minors, and school personnel assume a great deal of authority over their conduct during the school day.'" *Id.* (quoting *Fazzolari*, 303 Or. at 19-20)). "This degree of control is a touchstone of special relationships in Oregon." *Id.*; see also *Piazza*, 360 Or. at 72 (recognizing "schools have a special duty to students 'apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm,' and the 'scope of th[at] obligation does not exclude precautions against risks of crime or torts merely because a third person inflicts the injury'") (quoting *Fazzolari*, 303 Or. at 19, 20) (alteration in original).

In sum, upon examining decisions of the Oregon Supreme Court and other jurisdictions, and using the Third Restatement of Torts as guidance, the best prediction is the Oregon Supreme Court would find a public high school and its students have a special relationship. See *S.D. Myers*, 253 F.3d at 473. The relationship meets the four traits of a special relationship under Oregon law. See *Bell*, 239 Or. App. at 249-50. Parents relinquish control over their children to the school, and the school is authorized to exercise independent judgment in order to further the children's interests. The relationship also resembles other relationships "in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship," such as the relationship between a boarding school and its students, *Shin*, 199 Or. App. at 367, and a land occupier to entrants on the land. See RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 40 cmt. l (2012) (recognizing the "relationship between a school and its students parallels aspects of several other special relationships," including "a land possessor who opens the premises to a significant public population").

*C.M. v. Beaverton School District*, Case 3:17-cv-01662-YY Document 79, Filed 09/22/20 Page 10 of 31. Decl. Brague, Ex. 11.

Oregon's recognition of the special relationship between a school and its students is consistent with a nearly a majority of other jurisdictions, as follows:

*Marquay v. Eno*, 139 NH 708, 717, 662 A2d 272, 279 (1995) ["We agree with the majority of courts from other jurisdictions that schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision."] citing, *Wagenblast v. Odessa Sch. No.*

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

*105-157-166 J*, 110 Wash. 2d 845, 758 P.2d 968, 973 (Wash. 1988); *District of Columbia v. Doe*, 524 A.2d 30, 32 (D.C. 1987); *Fazzolari v. Portland School Dist. No. 1J*, 303 Ore. 1, 734 P.2d 1326, 1337 (Or. 1987); *Chavez v. Tolleson Elementary School Dist.*, 122 Ariz. 472, 595 P.2d 1017, 1020 (Ariz. Ct. App. 1979); *Hoyem v. Manhattan Beach City School Dist.*, 22 Cal. 3d 508, 585 P.2d 851, 853, 150 Cal. Rptr. 1 (Cal. 1978); *Pratt v. Robinson*, 39 N.Y.2d 554, 349 N.E.2d 849, 852, 384 N.Y.S.2d 749 (N.Y. 1976); *McLeod v. Grant County School Dist. No. 128*, 42 Wash. 2d 316, 255 P.2d 360, 362 (Wash. 1953).

See also, *Munn v. Hotchkiss Sch.*, 326 Conn 540, 550-51, 165 A3d 1167, 1176 (2017) citing *Todd M. v. Richard L.*, 44 Conn. Supp. 527, 543, 696 A.2d 1063 (1995); *Boisson v. Arizona Board of Regents*, 236 Ariz. 619, 622-23, 343 P.3d 931 (App. 2015), review denied, Arizona Supreme Court, Docket No. CV-15-0121, 2015 Ariz. LEXIS 348 (December 1, 2015); *Dailey v. Los Angeles Unified School District*, 2 Cal. 3d 741, 747, 470 P.2d 360, 87 Cal. Rptr. 376 (1970); *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1206 (Del. 2015); *District of Columbia v. Royal*, 465 A.2d 367, 369 (D.C. 1983); *Rupp v. Bryant*, 417 So. 2d 658, 666 (Fla. 1982); *Doe Parents No. 1 v. Dep't of Educ.*, 100 Haw. 34, 74, 58 P.3d 545 (2002); *Bellman v. Cedar Falls*, 617 N.W.2d 11, 21 (Iowa 2000); *Beshears v. Unified School District No. 305*, 261 Kan. 555, 563, 930 P.2d 1376 (1997); *Williams v. Kentucky Dept. of Education*, 113 S.W.3d 145, 148 (Ky. 2003); *Prier v. Horace Mann Ins. Co.*, 351 So. 2d 265, 268 (La. App.), cert. denied, 352 So. 2d 1042 (La. 1977); *Eisel v. Board of Education*, 324 Md. 376, 384, 597 A.2d 447 (1991); *Brown v. Knight*, 362 Mass. 350, 352, 285 N.E.2d 790 (1972); *Henderson v. Simpson County Public School District*, 847 So. 2d 856, 857 (Miss. 2003); *Graham v. Montana State University*, 235 Mont. 284, 289, 767 P.2d 301 (1988); *A.W. v. Lancaster County School District 0001*, 280 Neb. 205, 216, 784 N.W.2d 907 (2010); *Mirand v. New York*, 84 N.Y.2d 44, 49, 637 N.E.2d 263, 614 N.Y.S.2d 372 (1994); *Christensen v. Royal School District No. 160*, 156 Wn. 2d 62, 70, 124 P.3d 283 (2005);

See also, *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 14, 52 P3d 1230, 1233 (Sup Ct) citing *Pratt v. Robinson*, 39 N.Y.2d 554, 349 N.E.2d 849, 852, 384 N.Y.S.2d 749 (N.Y. 1976) and <u>Restatement (Second) of Torts</u> § 320 cmt. B.

The special relationship between a school and student is settled law in Oregon. See,

*Doe v. Medford Sch. Dist. 549C*, 232 Or App 38, 44-45 (2009)[Oregon School Boards

Association notes that schools have a heightened duty to keep students safe, given their in loco

parentis relationship with them].

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

b.   *The doctrine of In Loco Parentis establishes a special relationship*
     *between public schools and students.*

The doctrine of in loco parentis provides further authority for finding a special relationship between a public school and its students.

The in loco parentis or surrogate parent relationship creates a special relationship because of its basis upon the parent-child relationship. The parent-child relationship exemplifies the utmost fiduciary relationship in our society and is codified in Oregon law. See ORS 109.010 and 109.030. Oregon mandates that children between the ages of six and eighteen attend school. See ORS 339.010 and 339.020. When children are in the custody, care, and control of public schools, school personnel (acting in loco parentis) act in a surrogate parent role to protect children. *Pangle v. Bend-Lapine Sch. Dist.*, 169 Or App 376, 395 (2000) citing *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 684; 106 S.Ct. 3159; 92 L.Ed.2d 549 (1986).

This is the special relationship explicitly recognized by the Oregon School Boards Association as a heightened basis for keeping public school children safe at school. See *Doe*, supra.

c.   *Oregon's common law supports finding a special relationship between*
     *public school and students.*

Alternatively, the analysis for finding special relationships in Oregon is established in *Conway v. Pac. Univ.*, 324 Or 231, 240-41, (1996). It is the degree of control over the subject matter of the relationship.

> The "party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution."

*Id*. at 240.

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Public school districts are bodies corporate and have control of the district schools and are responsible for educating children residing in the district. ORS 332.072. A public school district shall admit free of charge all persons between the ages of 5 and 19 who reside within the school district boundaries. ORS 339.115. A parent of a student is required to send their child or children to school. ORS 339.010 and 339.020 and *Fazzolari*, supra. The burden, under criminal penalty, lies upon the parents to send their children to school. ORS 339.080, 339.090, and 339.990. Failure to do so is a Class C Violation which carries a maximum penalty of $500. ORS 153.018. Parents may be subject to ORS 163.577 – Failure to Supervise a Child, which also requires parents to send their children to school. Failure to supervise a child is a Class A violation which carries a maximum penalty of $2,000. ORS 153.018.

Defendant exercises complete and total control over the children in its custody. If abuse and harassment occur at school, then accountability rests upon the school district. *Fazzolari*. When a school is negligent with its children entrusted to its custody, care, and supervision, then that school must answer for its negligence. *Id*.

LOSD mandates that students between the age of 6 and 18 attend public school. Decl. Brague, Ex. 1, LOSD Policy JEA. Parents and students, conversely, have the right that students will be supervised and protected. "Because parents must relinquish their children to the school each day, and because those parents are necessarily absent once the transfer of custody has been accomplished, policy considerations impose on the school a duty of care to those students beyond the general duty of reasonable care." *F. T. v. W. Linn-Wilsonville Sch. Dist.*, 318 Or App 692, 700, (2022).

LOSD's Compulsory School Attendance Board policy and the common law create a duty of supervision upon which parents rely in giving responsibility and control over their

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

children for their education, as well as their safety and well-being. Thus, under the *Conway* analysis, a special relationship exists between a public school and its students.

C.    <u>Alex Boot will Suffer Irreparable Harm in the Absence of Preliminary Relief</u>.

A plaintiff must show that she is likely to suffer irreparable harm in the absence of preliminary relief. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir 2016) citing *Winter*, 555 U.S. at 20. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.*, citing *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Arc of Iowa v. Reynolds*, 559 F.Supp.3d 861, 875 (SD Iowa 2021) citing *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Denying a child their education is irreparable injury. See, *Bd. of Educ. v. F.C. ex rel. R.C.*, 2 F.Supp.2d 637, 645 (DNJ 1998)[loss of education constitutes irreparable harm]; *J.B. v. Killingly Bd. of Educ.*, 990 F.Supp 57, 72 (D Conn 1997); *Papacoda v. State*, 528 F.Supp 68, 72 (D Conn 1981); *Howard v. Friendswood Indep. Sch. Dist.*, 454 F.Supp 634, 641 (SD Tex 1978); *Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir 2013); *L.G. v. Port Townsend Sch. Dist. No. 50*, No. C09-5652 RBL, 2009 US Dist LEXIS 120701, at *7-8 (WD Wash Dec. 4, 2009).

Here, Alex Boot will be irreparably harmed by LOSD's unlawful expulsion of her without due process. Alex Boot is short credit for her English requirement for graduation. LOSD's unwillingness to provide her a safe education environment prevents her from attending school and earning her English credit. Further, as a putative graduating high school senior, Alex Boot like thousands of other graduating high school seniors, applied for and was accepted

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

to college.  Alex Boot anticipates attending Oregon State University this Fall as a Freshman.

LOSD's failure to remedy the hostile education environment will irreparably harm Alex Boot

by preventing her from graduating with a high school diploma and attending college.

Absent a preliminary injunction, Alex Boot will be irreparably harmed.

D.    The Balance of the Equities Favors Alex Boot.

Balancing the equities favors Alex Boot.

LOSD operates two high schools and one regional recovery charter school for grades 9-

12.  Decl. Brague, Ex. 2.

Alex Boot seeks to have the offending male student removed from LOHS and to finish

his school year within LOSD at Lakeridge High School or at an alternative education

environment.  Neither of these school placements disrupts the offending student's education or

his right to an education.

Equity favors Alex Boot.  She is the victim of a rape.  She informed LOSD and LOHS,

specifically, about the rape.  LOSD believes Alex Boot and knows Lake Oswego Police are

investigating, and it institutes a safety plan.  LOSD is aware on multiple occasions including

February 3, 2023 and March 9, 2023 that the offending male student violated the safety plan.

LOSD is aware as of March 13, 2023 that Alex Boot has missed 28 days of school.  Decl., Alex

Boot, Ex. 2 (Attendance record).  A victim of a rape or sexual assault should not be re-

traumatized on a daily basis by having to face her assailant.  Especially when the burden of

removing the offending student from the school and into another school or alternative education

program is slight.

There is no burden on LOSD for moving the offending student from LOHS to Lakeridge

High School.  LOHS has a student enrollment of about 1,300 students and Lakeridge High

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

School has a similar number of students (each school has 316 to 326 graduating seniors). Decl. Brague, Ex. 15 and 16, LOHS and Lakeridge Profiles. One student moving between the high school is of no consequence to LOSD. High school graduation standards are set by the Oregon Department of Education and credit requirements and opportunities are equal between LOSD's high schools. *Id*.

Public interest weighs in favor of removing the offending student from the campus of his victim. In Oregon during 2022 over 18,000 protective orders were sought. Decl. Brague, Ex. 12, Oregon State Court Statistics. This statutory benefit is unavailable to minors. ORS 107.726. Protective orders for adults provide a mechanism civil and criminal enforcement of a protective order. A defendant may be held in contempt for violating a protective order and imprisoned. *State ex rel. Hathaway v. Hart*, 70 Or App 541, 543, 690 P2d 514, 515 (1984). The protective order proceedings also allow a judge to order a respondent to maintain some specified distance away from the victim. Decl. Brague Ex. 13, Family Abuse and Prevention Act and Sexual Abuse Protective Order forms and instructions packets.

Absent recourse through the court, Alex Boot's health and safety is dependent upon LOSD and its administration of its policies. Public interest and equity favor an order requiring LOSD to remove students who sexually assault other students from the immediate campus. This is consistent with the Oregon's Family Abuse Prevention Act (ORS 107.700 et seq.). Oregon courts will continue a restraining order when there is "repeated behavior" and a continuing threat. *Walton v. Steagall*, 299 Or App 820, 824, 452 P3d 1059, 1062 (2019).

LOSD Policy states that it may discipline student engaging in sexual harassment. Decl. Brague, Ex. 5, Policy JBA/GBN. LOHS's Student Code of Conduct specifically states that "when violation of rules occur, the violators can expect appropriate disciplinary action, up to

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

and including expulsion." Decl. Brague, Ex. 14, LOHS Student/Parent Handbook, p. 16.

LOHS's Student/Parent Handbook also states that students may be expelled for violating any of

the following:

> Hazing, harassment, intimidation, bullying, menacing, cyber bullying or teen dating violence as prohibited by Board policy JFCF/GBNA - Hazing/Harassment/Intimidation/Bullying/Menacing/Cyber bullying/Teen Dating Violence/Domestic Violence - Student and accompanying administrative regulation;
>
> Coercion;
>
> Disorderly conduct;
>
> Sexual harassment as prohibited by Board policy JBA/GBN - Sexual Harassment and accompanying administrative regulation;
>
> Disruption of the school environment;
>
> Open defiance of a teacher's authority, including persistent failure to comply with the lawful directions of teachers or school officials;
>
> Violation of law, Board policy, administrative regulation, school or classroom rules.

Decl. Brague, Ex. 14, (Handbook p. 17 and Policy JGE).

Here, LOSD placed the offending student on a safety plan which he violated numerous

times. The offending student's admission of raping Alex Boot combined with his violations of

the safety plan reasonably indicate that he may be expelled for violating the above quoted

policies, specifically numbered 2, 8, 11, 12, and 13.

Based on the facts as known and provided within, LOSD has ample evidence to expel

the offending student for harassing and sexually harassing Alex Boot.

The last item for the Court's consideration in balancing the equities is the effect on the

offending student. The offending student admitted to raping Alex Boot. This is a very personal

act of violence upon Alex Boot. If the law had allowed her to obtain a restraining order, then

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

there is little doubt or speculation that the offending student would be required to keep some distance away from her at all times. This would necessitate that he attend another high school for the remaining months that Alex Boot will be in high school until her graduation in June, 2023.

Balancing the equities and public interest strongly favor the removal of an admitted rapist from the school environment and away from his victim. Alex Boot does not argue or want to curtail the offending student's right to attend school and LOSD has another high school or alternative school for him to attend. There will be no harm to the offending student's education by finishing this school year at Lakeridge High School or through LOSD's alternative education program.

E.      Injunctive Relief is in the Public Interest.

A district court should consider whether a preliminary injunction would be in the public interest if the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir 2016).

Protecting victims of rape, sexual assault, harassment, and bullying is in the public interest. "It is the policy of the State of Oregon that sexual harassment will not be tolerated in schools." ORS 342.700. It is the policy of the State of Oregon for the administration and operation of public elementary and secondary schools. ORS 326.011.

In addition, LOSD policies recognize the negative effects of sexual harassment in the school environment that "creates and intimidating, offensive or hostile environment" and prohibit such conduct. Decl. Brague, Ex. 5, Policy JBA/GBN. Further, LOSD's Policy JFCF recognizes the validity of this statement in defining harassment, intimidation or bullying. It has

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

the effect of "creating a hostile education environment including interfering with psychological well-being of the student."  Decl. Brague, Ex. 3.

The greater public interest in issuing a preliminary injunction here is that in many school districts in Oregon, victims of sexual assault are left in a hostile education environment when their assailants are not removed from the immediate school setting.  This circumstance is not unique to LOSD and leaving the victim to face their sexual assaulter has occurred in the following Oregon school cases:

| Name of Case | Case No. |
|---|---|
| Christianson v. Neah-Kah-Nie School District No. 56 | 12cv2124 |
| C.M. v. Beaverton School District 48J | 3:17-cv-1662 |
| R.H. v. Eugene School District 4J | 20cv39555 |
| Alex Boot v. Oregon City School District | 22cv06174 |
| M.F. v. St. Helens School District 502 | 23cv07163 |
| A.I. v. PPS | To be Filed |
| M.B. v. Philomath School District | To be Filed |
| R.B. v. Salem Keizer school District | To be Filed |
| R.R. v. Eugene 4J, et al. | To be Filed |

Decl. Brague, ¶16.

High school age children cannot seek redress in Oregon courts for a protective or restraining order after a rape, sexual assault, assault, or harassment under current Oregon law. The closest legislative and judicial body governing their behavior during the school day is their public school.  Oregon public schools are granted broad authority to transact all business coming within the jurisdiction of the district and control and are responsible for educating

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

children residing within the district.  ORS 332.072.  Oregon school districts fix the hours and days of school, establish curriculum, training educators, implement equity focused policies including addressing discrimination, establish complaint processes, and enter into agreements. ORS 332.075.  Oregon school district also establish rules for governing schools and students. ORS 332.107.

Oregon's general public has an interest in the education and well-being of its school aged children.  It is within the public interest for Oregon school districts, LOSD in particular, to keep its educational environments safe for victims of rape, sexual assault, assault, harassment, and bullying.

An injunction in this case will serve the public interest, as well as assist in protecting victims of rape, sexual assault, assault, harassment, and bullying from being re-traumatized on a daily basis in the school setting by their assailants.


/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503.922.2243

## CONCLUSION

For the foregoing reasons, Alex Boot requests the court grant her a temporary restraining order and preliminary injunction requiring LOSD to remove her rapist from LOHS which will allow her to complete her high school education and graduate in June 2023. Alex Boot further requests a preliminary injunction issue to put Oregon school districts on notice that retaining admitted rapists, sexual assaulters, harassers, and bullies in the same school environment should not be condoned when an equal education setting is available to the offending student.

DATED this 3rd day of April, 2023.

THE BRAGUE LAW FIRM

By _____

Kevin C. Brague, OSB No. 050428
kevin@braguelawfirm.com
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
t: 503.922.2243
f: 503.296.2046
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 9,919 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT on the party listed below by the following indicated method or methods:

Dr. Jennifer Schiele, Superintendent
*schielej@loswego.k12.or.us*
Lake Oswego School District
2455 Country Club Road
Lake Oswego, OR 97034

Ms. Nancy J Hungerford, OSB 812685
*nancy@hungerfordlaw.com*
The Hungerford Law Firm LLP
653 S Center St
PO Box 3010
Oregon City OR 97045
T: 503 781-3458
F: 503 650-4961
Attorney for Defendant

[ ] by electronic means through the U.S. District Court, District of Oregon's CM/ECF document filing system.

[X] by mailing a full, true and correct copy thereof in a sealed, first-class postage paid envelope, addressed to the address as shown above, with the U.S. Postal Service at Portland, Oregon, on the date set forth below.

[X] by causing a full, true, and correct copy thereof to be hand-delivered to the attorney at the attorney's last known office address listed above on the date set forth below.

[X] by emailing a full, true, and correct copy thereof to the attorney at the fax number shown above, which is the last-known fax number for the attorney's office, on the date set forth below.

DATED this 4th day of April, 2023.


/s/ Kevin Brague
Kevin C. Brague, OSB No. 050428

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243