**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
Telephone: 503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
Telephone: 503-726-5975
VICKERS PLASS LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035

  Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ALEXANDRA BOOT**, <br><br>            Plaintiff, <br><br> v. <br><br> **LAKE OSWEGO 7J SCHOOL DISTRICT,** an Oregon public corporate entity by and through the Board of Directors of lake Oswego 7J School District, <br><br>            Defendant. | Case No. 3:23-cv-00480-HZ <br><br><br> DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

  Defendant Lake Oswego 7J School District ("District") respectfully submits the within response to plaintiff's motion for a temporary restraining order.

**Introduction**

  Plaintiff is a student at Lake Oswego High School ("LOHS") within the defendant District. Plaintiff alleges that over the summer, in August 2022, off-campus and unconnected to any District program, she was sexually assaulted by a classmate. That allegation was reported to the District in late October 25, 2022. As the within factual record demonstrates, the District immediately reported the allegation to law enforcement, and worked to provide supportive

measures to plaintiff and to implement a safety plan that would allow both students to continue to access their education.

**Factual Background**

The following timeline and facts are relevant to the pending motion:

- <u>October 25, 2022</u>:  LOHS Assistant Principal Ryan Rosenau was informed by plaintiff's father via voicemail that plaintiff alleged that one of her classmates at LOHS sexually assaulted plaintiff over the summer, off-campus.  Rosenau immediately reported the matter to LOHS resource officer, Bryan Sheldon.  Officer Sheldon is a member of the Lake Oswego Police Department.  Rosenau returned Mr. Boot's call with a voicemail.  After school that same day, Rosenau met with Mr. Boot in person and Officer Sheldon on the phone.  Officer Sheldon and Mr. Boot discussed the process of obtaining a temporary restraining order.  Mr. Boot shared concerns about plaintiff, plaintiff's sibling, and the other student sharing classes.  Thereafter, Rosenau commenced work on a safety plan to keep plaintiff and the other student away from each other at school.  Declaration of Ryan Rosenau ("Rosenau decl.") ¶¶ 2, 3.

- <u>November 7, 2022</u>:  Rosenau met with plaintiff and her parents to go over the draft safety plan.  Rosenau met with the other student and his parents separately.  After the safety plan was finalized, Rosenau sent it to both families.  As part of the safety plan, the other student was transferred out of the class he shared with plaintiff and strict requirements were placed on his movement during passing time, lunch, and other unstructured time.  Rosenau decl. ¶ 4 & T. Boot decl. Ex. 1.

- <u>November 14, 2022</u>:  Rosenau followed up with plaintiff and her parents regarding the

status of the safety plan.  Plaintiff advised that the "safety plan is going very well and has been a comfort for me to have."  Rosenau decl. ¶ 5 & Ex. 2.

Between November 7, 2022 and February 2, 2023, Rosenau did not receive any reports that the other student had violated the safety plan.  Rosenau decl. ¶ 6.

- <u>January 30, 2023</u>:  Second semester commenced Monday, January 30, 2023.  The safety plan that had been in place addressed plaintiff and the other's student's first semester schedules. Rosenau decl. ¶ 7.

- <u>February 3, 2023</u>:  Plaintiff reported that she ran into the other student at school. Rosenau determined that there was no violation of the safety plan by the other student, who per the plan, immediately went the other direction when he saw plaintiff.  However, Rosenau determined that the safety plan needed to be updated due to changes in plaintiff's class schedule. Rosenau decl. ¶ 7.

- <u>February 6, 2023</u>:  Rosenau provided the updated safety plan to plaintiff and her parents. Rosenau decl. ¶ 7.

- <u>February 13, 2023</u>:  Rosenau met with plaintiff, her parents, Sina Wibstad (social worker for the District), and Adam Johnson (plaintiff's school counselor) regarding the updated safety plan.  Rosenau decl. ¶ 8.

- <u>March 9, 2023</u>:  Plaintiff reported that the other student violated the safety plan by leaving class at the end of the school day without waiting the required five minutes.  Plaintiff saw the other student from her location on the second floor at LOHS through a window, as he appeared to be exiting the courtyard below.  Rosenau determined that the other student had violated the safety plan by leaving when the bell rang rather than waiting the five minutes as

required by the safety plan.  Rosenau contacted the other student that night and he admitted to the violation.  The other student was asked to stay home from school the next day, a Friday, which he did.  Rosenau decl. ¶ 9.

- <u>March 13, 2023</u>:  The District met with both families separately.  The need for strict compliance was re-iterated to the other student's family, and the other student agreed to comply.  Both families were advised of other options for their children to complete the remainder of the year outside of LOHS.  Plaintiff's parents advised that plaintiff would not return to LOHS until the other student was expelled or otherwise removed.  Rosenau decl. ¶¶ 10-11.

- <u>March 14, 2023</u>:  Rosenau met with the other student and reiterated that he needed to strictly comply with the safety plan.  Rosenau decl. ¶¶ 12.

Plaintiff has never been expelled from LOHS.  Per District policy and state law, "A student whose attendance is reported as hours of instruction **must be withdrawn** from the active roll on the day following the tenth consecutive day of absence from the program in which they are enrolled."  (emphasis added).  OAR 581-023-0006(4)(b).  The District attempted to explain this process to plaintiff's family.  All school districts in Oregon are required to follow this administrative regulation and notify families of it in their policies and handbooks.  *See. e.g.,* Hillsboro School District Policy JE/JED/JEDA at p. 2 ("[A]ny student absent from school for 10 consecutive days must be dropped from school rolls[.]) (available at: HSD Policy JE/JED/JEDA); West Linn High School Policy ("Oregon State Law requires that we withdraw students who miss 10 consecutive days of school.") (available at West Linn High School Attendance Procedures).  This process has been explained to plaintiff's family.  Rosenau decl. ¶¶ 13 – 14 & Ex. 3.

Plaintiff's family raised the issue of plaintiff's graduation and her impending enrollment at Oregon State University ("OSU"). The District contacted OSU to find out what plaintiff needs to do to stay on track to enroll there in the fall. The District presented multiple options to plaintiff and plaintiff's family to assist her in completing the coursework she needs to graduate and successfully enroll at OSU. The District has changed plaintiff's status internally so that she continues to have access to Google Classroom and her school email address to facilitate that process. In addition to the safety plan, plaintiff's school counselor, a social worker, and a student engagement specialist have worked to provide plaintiff support, so that she can successfully graduate from LOHS. *See* Rosenau decl. ¶¶ 14-15.

## STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). Courts balance the competing claims of injury and consider the effect on each party of granting or denying the injunction. A party seeking a temporary restraining order must demonstrate: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20. A plaintiff must prove all four of the elements before a court may issue preliminary relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F3d 1127, 1135 (9th Cir. 2011) (finding that in light of *Winter*, absent a showing of irreparable harm, no balancing of factors is allowable). Thus, regardless of how strong the other elements may be, if a party seeking preliminary relief fails to prove any one of the elements required by *Winter*, the court cannot grant preliminary

relief. The injunction "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis in original).

## ARGUMENT

### I. Plaintiff has not established that she is likely to succeed on the merits.

Plaintiff has not established that she is likely to succeed on the merits of her Title IX, state law retaliation, or negligence claims.

#### A. Title IX peer harassment: The District has not been deliberately indifferent.

To be liable under Title IX for peer-on-peer sexual harassment, the defendant school district must have had 1) "actual knowledge" of, and 2) been "deliberately indifferent" to, 3) harassment "on the basis of sex" by 4) someone whom the school district controlled, and in a context the school district controlled that was 5) so "severe, pervasive, and objectively offensive" that it deprived the plaintiffs of access to the educational benefits or opportunities provided by the school district. *Davis v. Monroe Co. Bd. of Educ.,* 526 U.S. 629, 644-45 (1999).

Deliberate indifference is a high standard. *See Oden v. N. Marianas Coll.,* 440 F.3d 1085, 1089 (9th Cir. 2006). "The Ninth Circuit has made clear that to be actionable under Title IX, an educational institution's response to harassment must be '*clearly unreasonable* in light of the known circumstances.'" *T.L. ex rel. Lowry v. Sherwood Charter Sch.,* 2014 WL 7272620 at *11 (D. Or. Dec. 18, 2014) (quoting *Davis,* 526 U.S. at 648) (emphasis added). "In other words, [a court within the Ninth Circuit] must decide whether on [the record before it], one could find that the [educational institution] made an official decision…not to remedy the violation." *Lowry,* 2014 WL 7272620 at *11 (quoting *Oden,* 440 F.3d at 1089). The "clearly unreasonable"

standard does not require a school to "purg[e itself] of actionable peer harassment" nor does it require a school to "engage in a particular disciplinary action," or to acquiesce to the remedial demands of victims. *Davis,* 526 U.S. at 648 (noting, in addition that "courts should refrain from second-guessing disciplinary decisions made by school administrators").

Here, the District has not been deliberately indifferent. Title IX and the District's policies do not allow the District to discipline the other student for the alleged incident which occurred off-campus during the summer and for which the other student has not been criminally charged. The District provides supportive measures to plaintiff to allow her to access her education and to prevent harassment at school. The District has not been deliberately indifferent in implementing those measures. When the allegations were first reported, the District implemented a safety plan which transferred the other student out of the class plaintiff shared with him and put strict limitations on that student's movement while he is at school. The District confirmed that the plan was working well for plaintiff. No incidents were reported for a three-month period.

In February 2023, when plaintiff reported that she crossed paths with the other student due to scheduling changes, the plan was updated. The other student violated the safety plan one time in March 2023. There were mitigating circumstances regarding that violation. Regardless, the other student was out of school for one day following that incident and the District held two meetings with him following it, re-iterating the need for strict compliance with the plan.

Plaintiff's counselor, a District social worker, and a District engagement specialist have attempted to work with plaintiff to complete her graduation requirements.

In this very challenging situation, where the District is responsible for educating and upholding the rights of both students, the District's response has not been deliberately indifferent. *See Lossman v. Sage International School of Boise,* 810 Fed. Appx. 577 (9th Cir. 2020) (so holding in a Title IX case arising out of an off-campus incident, where principal took immediate action, communicated with parents, and created supervision plan).

**B. Title IX and ORS 659.852: The District has not retaliated against plaintiff.**

The District has not retaliated against plaintiff. She has not been expelled from the District.

To make out a prima facie case of Title IX retaliation and retaliation under state law, a plaintiff must show "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there is a causal link between the two." *Emeldi v. Univ. of Oregon,* 673 F.3d 1218, 1223 (9th Cir. 2012); *Rollins v. McMinnville School Dist. 040,* 2021 WL 5611318, *14 (D. Or. Nov. 27, 2021) (holding " that a claim under ORS 659.852 should be analyzed in the same manner as the Title IX retaliation claim.") If the plaintiff makes that showing, the defendant must articulate a legitimate, non-retaliatory reason for the challenged action. *Id.* at 224. If the defendant does so, the plaintiff must then show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the decision or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id.*

Here, plaintiff alleges that the District retaliated against her by dis-enrolling her, which plaintiff argues is the functional equivalent of an expulsion. Pursuant to OAR 581-023-

0006(4)(b), school districts in Oregon are required to disenroll students when they miss their tenth consecutive day of school. All school districts in Oregon are required to follow the same policy. The District was clearly not retaliating against plaintiff when it informed plaintiff's family of this process or when it informed the family of other ways plaintiff could successfully complete her classes and graduate. The record reflects that plaintiff's counselor investigated the situation, contacted OSU, and worked with plaintiff's teacher to make sure that plaintiff has access to all the work she needs to graduate on time and enroll at OSU in the fall. Plaintiff can return to in person schooling at LOHS at any time.

The District has not retaliated against plaintiff.

### C. Negligence: The District was not negligent.

Plaintiff is not likely to succeed on the merits of the negligence claim because the District has not been negligent. Additionally, plaintiff does not allege that the District's alleged negligence caused a physical injury.

The complaint alleges that the District negligently enforced the safety plan, and that the negligence has caused emotional harm. Complaint ¶¶ 39 – 44. As set forth above, the District has not been negligent. The District provided a detailed safety plan. There was one violation of the plan which the District learned about and the situation was immediately addressed.

Plaintiff also cannot succeed on the negligence claim because Oregon law does not permit claims for negligently inflicted emotional distress. Plaintiffs can only recover emotional distress damages in narrow circumstances: "when the defendant acted intentionally," and "when the defendant negligently causes foreseeable, serious emotional distress and also infringes some

other legally protected interest." *Philibert v. Kulsuer,* 360 Or. 698, 702 (2016) (citations omitted).  Plaintiff does not make intentional claims, thus she can only prevail if she establishes that the District infringed on some other legally protected interest apart from the claimed emotional distress.

A legally protected interest is "an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Locket v. Hill,* 182 Or App 377, 380 (2002) (quotations omitted).  The right to be "free from physical harm at the hands of another" is the most well-recognized legally protected interest.  *Gaston v. Parsons,* 318 Or 247, 255 n. 8 (1994).[1]  Relevant here, another legally protected interest is a "special relationship.  That is, "[c]ertain types of special relationships…give rise to a legally protected interest sufficient to support the imposition of liability for purely emotional harm."  *Shin v. Sunriver,* 199 Or App 352, 356 (2005).

Courts in this District and in state courts throughout Oregon have held that public schools are not in the type of "special relationship" with their students that would allow the latter to recover for purely emotional harm.  *See, e.g., Achcar-Winkels v. Lake Oswego Sch. Dist.,* 2017 WL 9084984, *27 (D. Or. Feb. 21, 2017)[1] (rejecting claim that student and her parents were in the type of "special relationship that would permit recovery of emotional distress absent a physical injury); *Doe v. Gladstone Sch. Dist.,* 2012 WL 2049173, *12 (D. Or. June 6, 2012).  The term "special relationship" means different things in different tort contexts.  The *Achcar-Winkels* opinions, cited by plaintiff, illustrate these differences.  Students and schools are in a "special relationship" that might have significance, for example, regarding whether a school's

---

[1] Characterizing the right to be free from physical harm as a "legally protected interest" is "a different way of stating the general rule that emotional distress damages are available to a plaintiff who is physically injured." *Philibert,* 360 Or at 703, n. 2.

PAGE 10 – DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

conduct was sufficiently outrageous to support an intentional infliction of emotional distress (IIED claim). *Achar-Winkels v. Lake Oswego Sch. Dist.,* 2017 WL 2291338, *4 (D. Or. May 25, 2017). But just because that "special relationship" exists, does not mean that plaintiff can recover for NIED. *See id.* at *2 n. 2.

The cases plaintiff cites do not hold otherwise and in fact illustrate that the phrase "special relationship" means different things depending upon how it is used in different tort contexts. *See, e.g.,* dkt. Mot. for TRO at 18-22 citing *Fazzalari v. Fazzolari v. Portland School District No. 1J*, 303 Or 1 (1987), *Piazza v. Kellim*, 360 Or 58 (2016); *C.M. v. Beaverton Sch. Dist.,* Case No. 3:17-cv-01662-YY. The Court in *Fazzolari* did not hold that students and their parents can sue school districts for purely emotional harm. The reason *Fazzolari* did not hold that students and their parents can sue schools in negligence for purely emotional distress is that the student in *Fazzolari* sought to recover for emotional distress that was related to a physical "impact," namely, a sexual assault. *Piazza* likewise provides no support for plaintiff's argument because the estate in *Piazza* sought to recover for a physical injury, namely, the student having been shot and killed. Similarly, *C.M,* lends no support for plaintiff's position because there the plaintiff student sought to recover damages in negligence for an alleged sexual assault.

Here, plaintiff is not alleging that the District negligently caused a physical injury, as was alleged by the plaintiff's in *Fazzolari, Piazza*, and *C.M.* She does not seek to hold the District responsible for the alleged off-campus sexual assault. Rather, plaintiff is alleging that the District's response to her allegations of off-campus sexual misconduct was negligent and foreseeably caused her emotional harm. As explained, the District was not negligent. But regardless, plaintiff's negligence theory is legally flawed because Oregon law does not permit

plaintiffs to bring negligence claims for purely emotional harm in these circumstances.

## II.     Irreparable Harm, Balance of Equities, and the Public Interest

The standards applicable to the remaining three temporary restraining order factors are set forth above and in plaintiff's motion for a temporary restraining order.  Over a period of months the District has endeavored to provide supportive measures to plaintiff while at the same time respecting the rights of the other student and providing him with an education.  The District's process has been attentive, careful, and fully compliant with its understanding of the applicable law.  This Court should deny plaintiff's motion.

DATED: April 7, 2023.

VICKERS PLASS LLC


*s/ Karen M. Vickers*
**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
503-726-5975
   Of Attorneys for Defendant